## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ZEPHERINE MILLER, ADMINISTRATOR and PERSONAL REPRESENTATIVE of the ESTATE OF RAYMOND LAMAR BAILEY, deceased, | ) ) ) ) ) | |
| | ) | Case No. CIV-25-724-D |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| THE GEO GROUP, INC., | ) ) | |
| Defendant. | ) ) | |

_____

## MOTION TO DISMISS OF DEFENDANT
## THE GEO GROUP, INC. AND BRIEF IN SUPPORT
_____


Robert S. Lafferrandre, OBA No. 11897
John H. Kim, OBA No. 31613
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
rlafferrandre@piercecouch.com
jkim@piercecouch.com
*Attorneys for Defendant*
*The GEO Group, Inc.*


July 28, 2025

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................. i

**TABLE OF AUTHORITIES** ....................................................................... ii

**INTRODUCTION** ......................................................................................... 1

**ARGUMENTS AND AUTHORITIES** .......................................................... 3

**I.     PLAINTIFF'S "CUT AND PASTE" ALLEGATIONS FAILS
        TO STATE A CLAIM** ........................................................................... 4

**II.    PLAINTIFF HAS FAILED TO IDENTIFY AN UNDERLYING
        CONSTITUTIONAL VIOLATION OF "FAILURE TO PROTECT"** ............ 6

**III.   *MONELL LIABILITY*** .......................................................................... 9

      **A.     PLAINTIFF HAS NOT IDENTIFIED ANY
              INFORMAL CUSTOM** ............................................................... 11

      **B.     LACK OF CAUSAL CONNECTION** ...................................... 14

      **C.     TRAINING/SUPERVISION** ................................................... 15

**IV.    ANY CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL
        DISTRESS FAILS AS A MATTER OF LAW** .................................. 19

**V.     THE OKLAHOMA GOVERNMENT TORT CLAIMS ACT DOES NOT
        EXTEND TO DEFENDANT** .............................................................. 20

**CONCLLUSION** ......................................................................................... 21

**CERTIFICATE OF SERVICE** .................................................................... 22

# TABLE OF AUTHORITIES

**Cases**                                                                                                                      **Page(s)**

*Arnold v. City of Olathe, Kansas,*
   35 F.4th 778 (10th Cir. 2022) .......................................................................................... 6
*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................. 3, 4
*Avelar v. Oklahoma Cnty. Criminal Justice Authority,*
   2025 WL 719789 (W.D. Okla. Feb. 14, 2025) ............................................................ 7
*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
   520 U.S. 397 (1997) ................................................................................................... 14
*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................. 3, 4
*Bowens v. Tidwell,*
   2020 WL 5222414 (W.D. Okla. Sept. 1, 2020) .......................................................... 17
*Brant v. Shea Mortg, Inc.,*
   2011 WL 1300360 (D. Nev. Mar. 30, 2011) ................................................................ 5
*Brock v. Thompson,*
   1997 OK 127, 948 P.2d 279 ........................................................................................ 19
*Brown v. U.S. Bank Nat'l Ass'n,*
   2014 WL 3764887,n.2 (N.D. Tex. July 31, 2014) ........................................................ 5
*Bryson v. City of Oklahoma City,*
   627 F.3d 784 (10th Cir. 2010) .................................................................................... 14
*Burgin v. Leach,*
   529 Fed. Appx. 882 (10th Cir. 2013) ........................................................................... 6
*City of Canton, Ohio v. Harris,*
   489 U.S. 378 (1989) .............................................................................................. 16, 17
*Carney v. City & Cnty. of Denver,*
   534 F.3d 1269 (10th Cir. 2008) .................................................................................. 11
*Cipolloni v. City of New York,*
   758 Fed. Appx. 76 (2d Cir. 2018) .............................................................................. 13
*Connick v. Thompson,*
   563 U.S. 51 (2011) ................................................................................................ 16, 17
*Crowe v. Clark,*
   552 Fed. Appx. 796 (10th Cir. 2014) ........................................................................... 6

*Crowson v. Washington Cnty. Utah*,
  983 F.3d 1166 (10th Cir. 2020) ......................................................................................... 9
*Damond v. City of Rayville*,
  127 F.4th 935 (5th Cir. 2025) ........................................................................................... 14
*Dubbs v. Head Start, Inc.*,
  336 F.3d 1194 (10th Cir. 2003) ....................................................................................... 10
*Erickson v. Manatee Cnty. Sheriff's Dep't*,
  824 Fed. Appx. 861 (11th Cir. 2020) ............................................................................... 13
*Farmer v. Brennan*,
  511 U.S. 825 (1994) ........................................................................................................... 7
*Fisher v. Harden*,
  398 F.3d 837 (6th Cir. 2005) ........................................................................................... 16
*Frost v. Aurora Loan Servs., LLC*,
  2011 WL 3471024 (N.D. Cal. Aug. 5, 2011) ..................................................................... 5
*Givens v. Smith*,
  2014 WL 1393181,n.10 (N.D.W.V. Apr. 9, 2014) ............................................................. 5
*Goss v. Bd. of Cnty. Comm'rs of Creek Cnty.*,
  2014 WL 4983856 (N.D. Okla. Oct. 6, 2014) ................................................................... 17
*Griego v. City of Albuquerque*,
  100 F. Supp. 3d 1192 (D.N.M. 2015) ......................................................................... 11, 15
*Hahn v. Walsh*,
  762 F.3d 617 (7th Cir. 2014) ............................................................................................. 6
*Harper v. Se. Ala. Med. Ctr.*,
  998 F. Supp. 1289 (S.D. Ala. 1998) ................................................................................. 14
*Hernandez v. United States*,
  939 F.3d 191 (2d Cir. 2019) ............................................................................................. 17
*Holloman v. Markowski*,
  661 Fed. Appx. 797 (4th Cir. 2016) ................................................................................. 13
*Irizarry v. City & Cnty. of Denver*,
  661 F. Supp. 3d 1073 (D. Colo. 2023) ............................................................................. 14
*Johnson v. Davis Cnty.*,
  2022 WL 830202 (10th Cir. Mar. 21, 2022) ...................................................................... 9
*Johnson v. Geo Grp., Inc.*,
  2019 OK CIV APP 13, 436 P.3d 759 ................................................................................ 20
*M.C. v. Hollis Indep. Sch. Dist. No. 66 of Harmon Cnty., Oklahoma*,
  2017 WL 1102680 (W.D. Okla. Mar. 23, 2017) ............................................................... 19
*Mann v. Yarnell*,
  497 F.3d 822 (8th Cir. 2007) ........................................................................................... 16

iii

*Meadows v. Whetsel*,
  2015 WL 7016496 .......................................................................................................... 19
*Miles v. Conrad*,
  805 Fed. Appx. 607 (10th Cir. 2020) ............................................................................... 6
*Miller v. Miller*,
  1998 OK 24, 956 P.2d 887 ............................................................................................. 19
*Mindler v. Clayton Cnty.*,
  831 F. Supp. 856 (N.D. Ga. 1993)................................................................................... 14
*Monell v. v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 .................................................................................................................... 10
*Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985) ........................................................................................................ 16
*Olsen v. Layton Hills Mall*,
  312 F.3d 1304 (10th Cir. 2002)....................................................................................... 16
*Parker v. Gosmanova*,
  335 Fed. Appx. 791 (10th Cir. 2009) ............................................................................... 6
*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) ........................................................................................................ 10
*Peterson v. City of Fort Worth, Tex.*,
  588 F.3d 838 (5th Cir. 2009)........................................................................................... 18
*Plinton v. County of Summit*,
  540 P.3d 459 (6th Cir. 2008)........................................................................................... 16
*Quintana v. Santa Fe Cnty. Bd. of Comm'rs*,
  973 F.3d 1022 (10th Cir. 2020)......................................................................................... 9
*Rendon v. Berry Glob. Inc.*,
  2023 WL 3724795 (S.D.N.Y. May 30, 2023).................................................................... 4
*Requena v. Roberts*,
  893 F.3d 1195 (10th Cir. 2018)......................................................................................... 6
*Riccardo v. Rausch*,
  375 F.3d 521 (7th Cir. 2004)............................................................................................. 9
*Sandberg v. Englewood, Colorado*,
  727 Fed. Appx. 950 (10th Cir. 2018) .............................................................................. 19
*Sawyer v. Jefferies*,
  315 Fed. Appx. 31 (10th Cir. 2008) .................................................................................. 6
*Scalia v. Cty. of Kern*,
  493 F. Supp. 3d 890 (E.D. Cal. 2019) ............................................................................. 13
*Schneider v. City of Grand Junction Police Dept.*,
  717 F.3d 760 (10th Cir. 2013)......................................................................................... 14

*Sexton v. City of Colorado Springs*,
  530 F. Supp. 3d 1044 (D. Colo. 2021) ............................................................. 14
*Shrader v. White*,
  761 F.2d 975 (4th Cir. 1985) ............................................................................. 9
*Sigg v. Allen Cnty., Kansas, Bd. of Cnty. Commissioners*,
  712 Fed. Appx. 738 (10th Cir. 2017) ................................................................. 6
*Smedley v. Corr. Corp. of Am.*,
  175 Fed. Appx. 943 (10th Cir. 2005) ............................................................... 10
*Thomas v. Dart*,
  39 F.4th 835 (7th Cir. 2022) ............................................................................... 9
*Tirado v. City of Minneapolis*,
  521 F. Supp. 3d 833 (D. Minn. 2021) ............................................................... 13
*Trevino v. Gates*,
  99 F.3d 911 (9th Cir. 1996) ............................................................................... 13
*Waller v. City & Cnty. of Denver*,
  932 F.3d 1277 (10th Cir. 2019) ............................................................... 11, 14
*Westmoreland v. Brown*,
  883 F. Supp. 67 (E.D. Va. 1995) ....................................................................... 9
*White v. City of Albuquerque*,
  2014 WL 12639935 (D.N.M. Sept. 29, 2014) ................................................. 19
*White v. Oklahoma ex rel. Tulsa Cnty. Office of Dist. Attorney*,
  250 F. Supp. 2d 1319 (N.D. Okla. 2002) ......................................................... 17
*Yelton v. Bd. of Cnty. Commissioners of Canadian Cnty.*,
  2024 WL 4415249 (W.D. Okla. Mar. 18, 2024) ............................................. 11

## Statutes

42 U.S.C. § 1983 ............................................................................ 2, 6, 9, 10, 21

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................ 1, 3
Rule 11 of the Federal Rules of Civil Procedure ................................................. 5

## MOTION TO DISMISS OF DEFENDANT THE GEO GROUP, INC.

Defendant, The GEO Group, Inc., ("GEO" or "Defendant") moves for an Order dismissing Plaintiff's claims against it under Fed. R. Civ. P. 12(b)(6). Defendant offers the following brief in support.

### INTRODUCTION

Plaintiff alleges that on October 26, 2023[1] Raymond Lamar Bailey was murdered by fellow inmates inside his cell in Housing Unit 4 at Lawton Correctional and Rehabilitation Facility ("LCRF")[2]. According to Plaintiff, for reasons unknown, two unidentified inmates entered Mr. Bailey's cell and murdered him in the early morning hours of October 26, 2023. Mr. Bailey succumbed to multiple traumatic injuries, including sharp force penetration of the skull in three different areas.

The Complaint states that Housing Unit 4, where Mr. Bailey was housed, was overseen by LCRF detention officers Daniel Tucker, Sadie Eilers, and Nathan Allgood at the time of the incident. No other factual allegations are made as to Tucker or Eilers, including what they knew or could have done to prevent the assault. As to Allgood, Plaintiff makes one singular factual allegation: "Correctional Office Allgood let the inmate suspected of murder out of his assigned cell…." *See* Doc. 1, ¶ 14. There are no allegations

---

[1] While the Complaint initially alleges Mr. Bailey died on January 31, 2023, the Complaint later alleges he died on October 26, 2023. According to the Report from the Oklahoma Office of the Chief Medical Examiner, Mr. Bailey died on October 26, 2023. *See* Doc. 1-1, Exhibit 1, *Report of Investigation by Medical Examiner*.

[2] At the time, The GEO Group, Inc. owned and operated Lawton Correctional and Rehabilitation Facility.

this was improper or done with some malevolent reason, including any allegation that Allgood did so with the knowledge Mr. Bailey would be murdered. Notably, Plaintiff does not *actually* allege that this inmate committed the murder. *Id*.

Then, Plaintiff asserts that *while* the murder was occurring, unnamed "inmates, inmate advocates, and family members of inmates" called LCRF to "advis[e] the Warden of the assault and death of Bailey." No other information is provided in the Complaint, including what time the murder occurred, who called the "Warden," whether anyone actually reached the "Warden," and what information was relayed and to whom. As this allegedly occurred *while* the murder was occurring, it is unclear what this would have done for Mr. Bailey. Notwithstanding, Plaintiff remarkably suggests that, had a count been done at the unspecified time of the murder, Mr. Bailey could have received emergency medical intervention for, *inter alia*, the multiple skull-puncturing stab wounds to the head, stab wounds to the neck, etc.

Finally, Plaintiff claims that unnamed "agents, employees, guards, and correctional officers" witnessed (or alternatively, failed to monitor) the events leading to Mr. Bailey's murder on a closed-circuit camera system but did nothing to intervene. Aside from omitting any identification of these individuals, the Complaint does not expand on what "events" they witnessed or failed to monitor. Perhaps it goes without saying, but for privacy reasons, there are no cameras inside inmates' cells. As such, it is wholly unclear what "events" were seen (or not) by these unidentified individuals that purportedly failed to intervene.

Based on the alleged murder, Plaintiff has sued under 42 U.S.C. § 1983 for purported violations of Mr. Bailey's Eighth Amendment rights. Plaintiff asserts that GEO

2

violated Mr. Bailey's constitutional rights by failing to take reasonable measures to guarantee his safety. *See* Doc. 1, ¶¶ 30, 32. Yet, it is only when there is a deliberate indifference to a known, substantial risk of harm, which implicates the protections of the Eighth Amendment. With respect to Mr. Bailey, the Complaint is devoid of any allegations establishing that any official at LCRF *knew* Mr. Bailey faced a substantial risk of harm, then deliberately disregarded that risk.

Equally, the Complaint is devoid of any allegations establishing the existence of an unconstitutional policy or custom of Defendant that was the moving force behind Mr. Bailey's unexpected murder. While Plaintiff claims Defendant had a "history of deliberate indifference with regard to the medical safety, and security of its inmates," Plaintiff has not shown *how*. Plaintiff only cites to unspecified, sporadic incidents of inmate-on-inmate violence without explaining what they have to do with Plaintiff's claims. In the end, the Complaint merely attempts to string together the typical municipal liability buzzwords in bringing claims against Defendant.

## ARGUMENTS AND AUTHORITIES

To survive a motion to dismiss pursuant to Rule 12 (b)(6), "**a complaint must contain *sufficient* factual matter**, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). A sufficiently pleaded complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. A complaint that merely offers labels and conclusions, a formulaic recitation of the elements, or "'naked assertion[s]' devoid of 'further factual enhancement,'" will not

survive a motion to dismiss. *Id*. (quoting *Twombly*, 550 U.S. at 557). While the Court is to accept all factual allegations as true at this stage, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678. Nor is the Court "'bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

The court must apply the "plausibility standard" which requires facts plead to "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557) (emphasis added). And when evaluating whether a claim is plausibly pled, the Court need not ignore an "obvious alternative explanation" for the alleged injury. *Twombly*, 550 U.S. at 570.

## I.     PLAINTIFF'S "CUT AND PASTE" ALLEGATIONS FAILS TO STATE A CLAIM

As an initial matter, 25% of the factual allegations of the Complaint, specifically Paragraphs 23, 24, 25, 26, 27, 28, 29, are word-for-word copies of the allegations made in *Vigil v. The GEO Group, Inc.*, Case No. CIV-24-678-G, Western District of Oklahoma (*See* Doc. 1, ¶¶ 18-24) and *Lockett v. The GEO Group, Inc.*, Case No. CIV-25-236-HE, Western District of Oklahoma (*See* Doc. 1, ¶¶ 18-24).

Courts have found that such generic, form pleading do not meet the requisite pleading standards. *See e.g.*, *Rendon v. Berry Glob. Inc.,* 2023 WL 3724795, at *6 (S.D.N.Y. May 30, 2023) (finding that the plaintiffs' "**cut-and-paste** and fill-in-the-blank

4

allegations" only "serve[d] to underscore the implausibility of [their] claims") (internal quotation marks omitted); *Frost v. Aurora Loan Servs., LLC*, No. 10-cv-2476-WHA, 2011 WL 3471024, at *1-2 (N.D. Cal. Aug. 5, 2011) (dismissing "a form complaint, containing entire blocks of boilerplate, nearly identical to a complaint in another case" and "devoid of any factual allegations"); *cf. Givens v. Smith*, No. 5:12CV145, 2014 WL 1393181, at *5 n.10 (N.D.W.V. Apr. 9, 2014) ("This clear example of '**cut and paste**' pleading . . . bolster[s] the Court's finding . . . that Plaintiff utterly fails to state a claim . . . ."); *Brant v. Shea Mortg, Inc*., No. 2:10-CV-829-FKD-RJJ, 2011 WL 1300360, at *1 (D. Nev. Mar. 30, 2011) ("Even a cursory examination . . . reveals that Plaintiffs have filed a **cut and paste**, boilerplate, form complaint which is almost completely devoid of facts, and is identical-- except for party names, dates, and property address--to other Complaints . . . filed with this Court."); *Brown v. U.S. Bank Nat'l Ass'n,* Civ. No. 3:14-CV-89-L, 2014 WL 3764887, at *1 n.2 (N.D. Tex. July 31, 2014) ("The court notes that Plaintiffs' **claims** in this case, **and** the **theories** that form the basis for those claims, **are virtually identical to** those filed by Plaintiffs' counsel in **numerous other cases** . . . . The court considers form pleadings to be a violation of Rule 11 of the Federal Rules of Civil Procedure. Accordingly, Plaintiffs' counsel . . . is directed to tailor the facts and legal theories to the particular case in which she provides representation.").

These cut and pasted allegations raise serious questions about the plausibility of Plaintiff's claims against Defendant. Through these copied allegations, Plaintiff attempts establish a pattern of prior incidents to bolster a claim of municipal liability against Defendant. *See* Doc. 1, ¶ 22 ("[GEO] had a history of deliberate indifference….").

Moreover, the copied material is completely ambiguous, referring to unspecified incidents of inmate-on-inmate assault, without explanation as to how they are similar or relate to Plaintiff's claims. Essentially, this amounts to a formulaic recitation of the elements of a cause of action, and dismissal is warranted on that basis.

## II.    PLAINTIFF HAS FAILED TO IDENTIFY AN UNDERLYING CONSTITUTIONAL VIOLATION OF "FAILURE TO PROTECT"

Notwithstanding, Plaintiff's claims cannot survive a 12(b)(6) motion. Plaintiff has sued GEO, a private corporation, under § 1983. Private corporations acting under color of state law may, like municipalities, be held liable under 42 U.S.C. § 1983. *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014); *see also Parker v. Gosmanova*, 335 Fed. Appx. 791, 794 (10th Cir. 2009). Like other claims for municipal liability, Plaintiff must also show an underlying constitutional violation. *Arnold v. City of Olathe, Kansas*, 35 F.4th 778, 795 (10th Cir. 2022); *Sigg v. Allen Cnty., Kansas, Bd. of Cnty. Commissioners*, 712 Fed. Appx. 738, 741 (10th Cir. 2017); *Crowe v. Clark*, 552 Fed. Appx. 796, 799 (10th Cir. 2014); *Burgin v. Leach*, 529 Fed. Appx. 882, 886 (10th Cir. 2013).

Plaintiff has fatally failed to demonstrate an underlying constitutional violation by any of Defendant's employees. To prevail on her failure to protect claim, Plaintiff must show "(1) that the conditions of his incarceration present[ed] an objective substantial risk of serious harm and (2) prison officials had subjective knowledge of the risk of harm." *Miles v. Conrad*, 805 Fed. Appx. 607, 610 (10th Cir. 2020) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (internal quotations omitted for clarity); *Sawyer v. Jefferies*, 315 Fed. Appx. 31, 34 (10th Cir. 2008). In other words, Plaintiff must sufficiently

allege prison officials were deliberately indifferent: that prison officials were both aware of the facts from which an inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

However, the Complaint does not allege facts supporting a reasonable inference that any LCRF official was *deliberately indifferent* to a risk of harm to Mr. Bailey. As noted in the Introduction, the Complaint identifies Daniel Tucker, Sadie Eilers, and Nathan Allgood as detention officers assigned to Mr. Bailey's housing unit. *See* Doc. 1, ¶ 14. Other than this banal fact, there are no factual allegations concerning their subjective knowledge concerning a risk of harm.

As to Sadie Eilers and Daniel Tucker, Plaintiff only alleges that they were both assigned to Mr. Bailey's housing unit and nothing more. While Plaintiff alleges Nathan Allgood let the suspected assailant out of his cell, *that allegation alone does not demonstrate what Allgood knew*: it does not demonstrate an awareness that a substantial risk of harm existed, or that Allgood disregarded that risk. Moreover, as noted above, Plaintiff does not allege that it was improper for Allgood to do this, or that it was done with some malevolent reason.

Notably, Plaintiff does not allege that this inmate committed the murder, but only that the inmate was later *suspected* to be the murderer and nothing more. Plaintiff equally does not allege that Allgood suspected, or otherwise thought, the inmate he let out would either murder or be implicated in the murder of Mr. Bailey. *Cf. Avelar v. Oklahoma Cnty. Criminal Justice Authority*, CIV-24-909-D, 2025 WL 719789, at \*3 (W.D. Okla. Feb. 14, 2025), *report and recommendation adopted sub nom. Avelar v. Oklahoma Cnty. Criminal*

7

*Justice Auth*., CIV-24-909-D, 2025 WL 715373 (W.D. Okla. Mar. 5, 2025) (finding allegations that, despite knowledge of a threat to the decedent's life, officials ignored him and provided no supervision of inmates where the decedent was housed, sufficient to survive a 12(b)(6) motion).

Finally, the Complaint also makes vague allegations that unnamed "inmates, inmate advocates, and family members of inmates" warned unidentified LCRF officials *while* the assault and killing was *in progress*. Temporally, warnings that were provided contemporaneously cannot serve as a basis for a failure to protect. There are also no other facts provided, including who said what to whom, when, or any other pertinent information. Equally vague are Plaintiff claims that unnamed "agents, employees, guards, and correctional officers" witnessed (or alternatively, failed to monitor) the events leading to Mr. Bailey's murder on a closed-circuit camera system. Plaintiff also offers no facts concerning who saw what, and what "events" were seen (or not) by these unidentified individuals that purportedly failed to intervene. These are conclusory allegations without any factual enhancement, and therefore, not entitled to the presumption of truth.

In sum, there are no facts alleged that, if established, might lead to a determination of knowledge sufficient to support a claim for deliberate indifference by any individual LCRF official. The Eighth Amendment protects the rights of those incarcerated by establishing certain constitutional minimums. Still, prison officials have never been held to be a guarantor of an inmate's safety from another inmate. And, Plaintiff cannot simply point to general incidents of violence at a correctional facility to create a plausible inference an unconstitutional custom exists. "The unfortunate reality is that jails and **prisons are**

**dangerous places inhabited by violent people**." *Thomas v. Dart*, 39 F.4th 835, 842 (7th Cir. 2022) (emphasis added); *see also Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004) ("[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more.") (emphasis added); *Westmoreland v. Brown*, 883 F. Supp. 67, 74 (E.D. Va. 1995) ("[a]ny time an individual is incarcerated, there is some risk that he may be a victim of violence at the hands of fellow inmates…." ) (emphasis added); *Shrader v. White*, 761 F.2d 975, 980 (4th Cir. 1985) ("The men confined…have been convicted…confined against their will. Under such circumstances acts of violence by inmates against inmates are inevitable. No amount of money and no increase in the number of prison officers is going to completely eradicate inmate violence from VSP or any other such institution.") (emphasis added).

## III.   *MONELL* LIABILITY

Still, Plaintiff has failed to sufficiently allege that GEO is liable for purposes of municipal liability. Like municipalities sued under § 1983, the traditional *Monell* framework applies to claims against private corporations like Defendant for alleged violations of constitutional rights. To establish liability against Defendant under §1983, Plaintiff must show: "'(1) an official policy or custom, (2) causation, and (3) deliberate indifference.'" *Johnson v. Davis Cnty.*, 21-4030, 2022 WL 830202, at \*3 (10th Cir. Mar. 21, 2022) (quoting *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020), further quoting *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020)).

Like traditional municipal defendants, GEO cannot be held liable on the basis of *respondeat superior*. In *Smedley v. Corr. Corp. of Am.*, 175 Fed. Appx. 943, 946 (10th Cir. 2005) (emphasis added), the Tenth Circuit stated:

> [I]t is now well settled that ***Monell* also extends to private defendants sued under § 1983**. See e.g., *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir.2003) (collecting circuit court cases). **As such**, **a private actor** such as CCA "**cannot be held liable solely because it employs a tortfeasor—or, in other words ... cannot be held liable under § 1983 on a respondeat superior theory**." *Monell* [*v. v. Dep't of Soc. Servs. of City of New York*], 436 U.S. [436 U.S. 658] 691, 98 S.Ct. 2018 (emphasis in original).

The requirement that a plaintiff demonstrate the existence of a custom or policy is "intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 U.S. at 479 (emphasis in original). It is for this reason that a plaintiff must demonstrate that the entity's "policy or custom" caused the constitutional tort in order to establish a claim against a municipality, or as here, against GEO. *Id.*, at 479-80. The Tenth Circuit, along with other federal circuits, has explicitly rejected vicarious liability in a § 1983 case for private actors based upon *Monell*." *Id*.

> A municipal policy or custom may take the following forms:
>
> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so

long as that failure results from deliberate indifference to the injuries that
may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). Here, Plaintiff has

alleged the second and fifth forms for purposes of his municipal liability claims against

GEO.

### A.   PLAINTIFF HAS NOT IDENTIFIED ANY INFORMAL CUSTOM

"With informal, unwritten policies, customs, or practices, the plaintiff can plead

either a pattern of multiple similar instances of misconduct – no set number is required,

and the more unique the misconduct is, and the more similar the incidents are to one

another, the smaller the required number will be to render the alleged policy plausible – or

use other evidence, such as a police officers' statements attesting to the policy's existence."

*Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015).

Here, Plaintiff has taken the former route, attempting to establish a pattern and

practice of failing to protect inmates at LCRF like Mr. Bailey. *See* Doc 1, ¶¶ 19, 21, 22.

However, Plaintiff has failed to plausibly allege the existence of any informal custom for

purposes of his municipal liability claims against GEO.

"'In attempting to prove the existence of such a continuing, persistent and

widespread custom, plaintiffs most commonly offer evidence suggesting that **similarly**

**situated individuals were mistreated by the municipality in a similar way**.'" *Yelton v.*

*Bd. of Cnty. Commissioners of Canadian Cnty.*, CIV-21-1001-G, 2024 WL 4415249, at *5

(W.D. Okla. Mar. 18, 2024) (citing *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1274

(10th Cir. 2008)) (emphasis added).

11

This is where Plaintiff's allegations fall apart. For example, Plaintiff relies, in part, on the April 23, 2024 letter from the Oklahoma Department of Corrections. However, aside from vague mentions of deficient counts and/or security checks, the letter provides little else. For instance, the letter is bereft of details demonstrating that Mr. Bailey's death, and the two other deaths cited therein, were similar in any way. Moreover, the letter does not state that the deaths, including Mr. Bailey's, were the *result of* any deficient counts and/or security checks. Instead it only notes that, in investigating these incidents, the deficiencies were noted. *See* Doc. 1-2, p. 5.

Plaintiff also attempts to string together unspecified incidents and/or reports of violence occurring in 2009, 2018, 2021, and 2022 at "GEO's facility." *See* Doc. 1, ¶¶ 23-25. Which facility? As alleged by Plaintiff, GEO operates detention centers in the United States and around the world. *Id.*, ¶ 9. So, which facility "around the globe" did these incidents and/or reports of violence occur? Plaintiff does not say.

Assuming that these incidents *did* occur at LCRF, they tell us nothing about whether it makes Plaintiff's claims more plausible than not. What happened with respect to incidents occurring in 2009, 2018, 2021, and 2022? Did these incidents involve issues with security counts and/or checks? Do they involve similar constitutional violations of failure to protect, as alleged by Plaintiff? Did these incidents occur due to the deliberate indifference of Daniel Tucker, Sadie Eilers, or Nathan Allgood? The Complaint fails to illustrate how any of the incidents were similar to the underlying facts, and why this Court should consider them in assessing the plausibility of Plaintiff's claims.

Setting aside the total absence of any demonstrable factual similarities, the cited incidents are further attenuated in time. And, "'Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of **sufficient duration, frequency and consistency** that the conduct has become a traditional method of carrying out policy.'" *Scalia v. Cty. of Kern*, 493 F. Supp. 3d 890, 901 (E.D. Cal. 2019) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)) (emphasis added); *see also Tirado v. City of Minneapolis*, 521 F. Supp. 3d 833, 842 (D. Minn. 2021) (stating alleged practices must be of a *sufficient duration* (and frequency) to permit notice of unlawful practice constituting unconstitutional custom or policy); *Cipolloni v. City of New York*, 758 Fed. Appx. 76, 78-79 (2d Cir. 2018) ("'[I]solated acts' by non-policymaking municipal employees are not sufficient to demonstrate a municipal custom or policy."); *Holloman v. Markowski*, 661 Fed. Appx. 797, 799 (4th Cir. 2016) (stating sporadic or isolated violations of rights will not give rise to *Monell* liability, only widespread or flagrant violations); *Erickson v. Manatee Cnty. Sheriff's Dep't*, 824 Fed. Appx. 861, 864 (11th Cir. 2020) (random acts or isolated incidents are insufficient to establish a custom or policy).

All in all, Plaintiff alleges that unspecified incidents with unnamed, unidentified inmates or staff, spread out from 2009 until 2023, supports a claim of municipal liability against GEO. The types of vague, generalized allegations are routinely dismissed, as they fail to overcome the basic requirements to demonstrate a plausible claim of municipal liability:

> Damond identifies only six additional fights over the course of several months, all involving different perpetrators and victims. These alleged incidents are insufficient to allege a custom or policy of tolerating

widespread, unprovoked violence in the detention center or to put the officials on notice of the repeated constitutional violations.

*Damond v. City of Rayville*, 127 F.4th 935, 939 (5th Cir. 2025); *Irizarry v. City & Cnty. of Denver*, 661 F. Supp. 3d 1073, 1093-94 (D. Colo. 2023) (scrutinizing "numerous" examples alleged to support an informal custom of a municipality, finding them insufficiently similar); *Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1071 (D. Colo. 2021) (finding isolated, sporadic incidents are not sufficient to establish municipal liability); *Harper v. Se. Ala. Med. Ctr.*, 998 F. Supp. 1289, 1301 (S.D. Ala. 1998) ("[T]he prior incidents must be sufficiently related in time and circumstances to the conduct giving rise to the pending action."); *Mindler v. Clayton Cnty.*, 831 F. Supp. 856, 862 (N.D. Ga. 1993) (finding "three remotely comparable allegations of similar conduct" insufficient to create a question of fact as to municipal liability).

## B.    LACK OF CAUSAL CONNECTION

To state a plausible claim against GEO, Plaintiff must also establish a direct causal link between policy or custom and the alleged injury. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (citing *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010)). When a claim of municipal liability is asserted, "**rigorous standards of culpability and causation must be applied** to ensure that the municipality is not held liable solely for the actions of its employee." *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997)) (emphasis added).

Plaintiff seems to allege that Mr. Bailey's death was the result of customary deficient counts and/or security checks, but fails to establish a sufficient causal connection between Mr. Bailey's death and alleged improper custom. Plaintiff alleges that Mr. Bailey was killed sometime between 5:00 and 7:00. While Plaintiff claims counts and/or security checks were routinely not conducted at these times, Plaintiff does not actually allege that no count/check was conducted on the date of Mr. Bailey's death at the relevant times. Moreover, Plaintiff does not explain how a custom of counts and/or security checks could have prevented Mr. Bailey's murder. For example, if Mr. Bailey was murdered at 5:30, and a count was conducted at 6:00, which is permissible (*see* Doc. 1-2, p. 3) what could counts and/or security checks have prevented?

Courts have emphasized that in pleading a basis for municipal liability, conclusory allegations of "policy or custom" will be rejected as insufficient. In *Griego*, the court reviewed numerous cases establishing that a plaintiff asserting the existence of *Monell* liability must provide factual allegations giving rise to an inference that the policies causing the constitutional violation actually exist. The *Griego* court concluded that "[t]hese cases all stand for the same thing: at the pleading stage, the existence of a *Monell* policy is a 'conclusion' to be built up to, rather than a 'fact' to be baldly asserted." *Griego*, 100 F. Supp. 3d at 1215 (emphasis added).

### C.    TRAINING/SUPERVISION

Plaintiff also asserts that Defendant failed to adequately train and/or supervise staff at LCRF, vaguely citing to the April 23, 2024 letter from the Department of Corrections. *See* Doc. 1, ¶ 38, citing Doc. 1-2. Yet, Plaintiff fails to allege *in what respect* there was a

failure to train or supervise, how that failure is causally connected to Mr. Bailey's death, and further fails to allege Defendant was deliberately indifferent to a need for more or additional training and/or supervision in the relevant respect.

As the Supreme Court has warned, "[a] municipality's culpability for a deprivation of rights is at its *most tenuous* where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (emphasis added). Likewise, in *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985), the Supreme Court reasoned that a policy of inadequate training is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*."

Thus, to establish municipal liability, the Supreme Court emphasized that the plaintiff must show that the entity's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 131 S. Ct. at 1359 (citing *Canton,* 489 U.S. at 388). *Connick* emphasized that deliberate indifference was a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id*. at 1360. To do this, "plaintiff must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. County of Summit,* 540 P.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden,* 398 F.3d 837, 849 (6th Cir. 2005)); *see also Mann v. Yarnell,* 497 F.3d 822, 827-28 (8th Cir. 2007); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1328 (10th Cir. 2002).

16

The demonstration of recurring violations of constitutional rights by untrained officers is key because, "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 131 S. Ct at 1360. Notably, accusations about how the officers were inadequately trained is not enough to establish municipal liability.

Plaintiff must also establish causation by identifying a deficiency in the training program that is "closely related to the ultimate injury," and then demonstrate that the deficiency in training caused the injury. *City of Canton*, 489 U.S. 378, 391; *Goss v. Bd. of Cnty. Comm'rs of Creek Cnty.*, No. 13-CV-0374-CVE-TLW, 2014 WL 4983856, at *20 (N.D. Okla. Oct. 6, 2014) ("The Supreme Court and the Tenth Circuit require more than a simple statement of fault to prove causation."). Thus, **merely alleging that the injury could have been avoided with "better or more training" is not enough**. *Hernandez v. United States*, 939 F.3d 191, 207 (2d Cir. 2019) (quoting *City of Canton*, 489 U.S. at 391). "The question is whether 'the injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect.'" *Id*; *see also Bowens v. Tidwell*, CIV-19-314-C, 2020 WL 5222414, at * 2 (W.D. Okla. Sept. 1, 2020); *White v. Oklahoma ex rel. Tulsa Cnty. Office of Dist. Attorney*, 250 F. Supp. 2d 1319, 1322-23 (N.D. Okla. 2002).

Plaintiff has not shown Defendant failed to train and/or supervise its employees in the relevant respect. *How* did Defendant fail to train and/or supervise as to counts and/or security checks? Was there no training? Was the training quantitatively insufficient? Was

17

the training qualitatively insufficient? Other than the two earlier 2023 incidents, where there any other failures? Plaintiff does not say. Plaintiff only alleges in conclusory fashion that counts and/or security checks were routinely not conducted at certain times, but offers no further factual enhancements to make that allegation plausible, including whether such failures were the result of a training or supervision failure.

Moreover, the April 23, 2024 letter only states that, in the course of investigating the incidents of March, May, and Mr. Bailey's death, there were findings of improper counts and/or security checks, not that those incidents *were the result of* improper counts and/or security checks. The letter also does not implicate Daniel Tucker, Sadie Eilers, or Nathan Allgood in those failures (and Plaintiff does not allege Tucker, Eilers, and/or Allgood failed to properly conduct counts and/or security checks, or that they were improperly trained/supervised in that regard).

As argued above, more fatal to Plaintiff's training/supervision claim is the absence of a causal connection between counts and/or security checks and Mr. Bailey's murder: Plaintiff does not explain how a count/check could have prevented Mr. Bailey's murder.

Finally, Plaintiff has not shown Defendant was deliberately indifferent to a need for more or better training/supervision regarding counts and/or security checks. At best, the April 23, 2024 letter cites to only two other incidents (the October incident referring to Mr. Bailey) concerning improper counts and/or security checks. However, "Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson*,

588 F.3d at 850 (5th Cir. 2009) (cited favorably in *Meadows v. Whetsel*, 2015 WL 7016496, at \*). Said another way, "[t]o establish notice, Plaintiff was required to prove the existence of a pattern of tortious conduct and not simply an isolated instance." *White v. City of Albuquerque*, No. CV 12-0988 MV/KBM, 2014 WL 12639935, at \*33 (D.N.M. Sept. 29, 2014).

As to those two other incidents, there are no facts to demonstrate any similarity between them and the subject incident, including whether the circumstances of each were similar, in what manner the counts and/or checks were deficient in those circumstances, and how, if at all, counts and/or checks could have prevented those incidents. This missing information is fatal to Plaintiff's claims herein as, "[**Plaintiff**] **must plausibly allege there is a *pattern* of deliberate indifference to situations _like_** [**Mr. Bailey's**]." *Sandberg v. Englewood, Colorado*, 727 Fed. Appx. 950, 963 (10th Cir. 2018) (emphasis added).

## IV.   ANY CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW

While unclear, to the extent Plaintiff asserts a state law claims against Defendant for intentional infliction of emotional distress ("IIED"), Plaintiff has failed to state a claim. "An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress." *Miller v. Miller*, 1998 OK 24, ¶ 33, 956 P.2d 887, 900 (citing *Brock v. Thompson*, 1997 OK 127, ¶ 35, 948 P.2d 279, 293–94.). Broken down to its elements, a claim for intentional infliction of emotional distress requires: (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) causing emotional distress; and, (4) the emotional distress was severe. *M.C.*

*v. Hollis Indep. Sch. Dist. No. 66 of Harmon Cnty., Oklahoma*, CIV-15-343-C, 2017 WL 1102680, at \*7 (W.D. Okla. Mar. 23, 2017).

The Complaint's perfunctory use of the buzzwords "extreme," "outrageous," and "severe emotional distress" are simply a formulaic recitation of the elements of an IIED claim. *See* Doc. 1, ¶¶ 46-47. As an initial matter, Plaintiff does not specify, or otherwise allege, what Defendant did or did not do. In other words, there is no alleged *intentional* conduct by Defendant. Furthermore, Mr. Bailey's alleged emotional distress was not *caused* by Defendant, but rather, caused by the acts of third parties. Defendant's alleged (in)action following the acts of a third party assailant(s) are not sufficient to constitute an IIED claim against Defendant.

## V.    THE OKLAHOMA GOVERNMENT TORT CLAIMS ACT DOES NOT EXTEND TO DEFENDANT

Lastly, the Complaint contains a subsection under "Claims for Relief" titled "Violation of Oklahoma Governmental Tort Claims Act." *See* Doc. 1, p. 12. Based on the allegations therein, it is unclear whether Plaintiff actually seeks to bring claims against Defendant pursuant to the Oklahoma Governmental Tort Claims Act. To the extent Plaintiff does, such claims fail as a matter of law. *See e.g.*, *Johnson v. Geo Grp., Inc.*, 2019 OK CIV APP 13, ¶ 39, 436 P.3d 759, 769 ("Unlike the DOC, the GEO parties are not protected by the State's sovereign immunity adopted in the Tort Claims Act….None of the GEO parties is the State of Oklahoma, a political subdivision of the State or an employee of either.").

## CONCLUSION

For the reasons stated herein, Defendant The GEO Group, Inc., respectfully requests the Court enter an Order dismissing Plaintiff's claims brought pursuant to 42 U.S.C. § 1983, and to the extent asserted, the state law claims for intentional infliction of emotional distress and pursuant to the Oklahoma Governmental Tort Claims Act.

Respectfully submitted,

 s/ John H. Kim
Robert S. Lafferrandre, OBA No. 11897
John H. Kim, OBA No. 31613
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma 73106
Telephone: (405) 235-1611
Facsimile: (405) 235-2904
rlafferrandre@piercecouch.com
jkim@piercecouch.com
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that on the 28th day of July, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and the transmittal of a Notice of Electronic Filing to all counsel who have entered an appearance in this action.

 s/ John H. Kim
John H. Kim