**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

ZEPHERINE MILLER, Administrator   )
and Personal Representative of the Estate )
of Raymond Lamar Bailey, Deceased,    )
                                    )
        **Plaintiff,**      )
                                    )
v.                           )     **Case No. CIV-25-724-D**
                                    )
THE GEO GROUP, INC.,        )
                                    )
        **Defendant.**    )

## REPORT AND RECOMMENDATION

Defendant The GEO Group, Inc. ("GEO") moves to dismiss Plaintiff's Complaint against GEO for failure to state a claim. Doc. 9.[1] Chief United States District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 2. The undersigned recommends the Court deny Defendant's motion to dismiss.

## I.    Background

Plaintiff Zepherine Miller is the sister of Raymond Lamar Bailey and the Administrator of his estate. Compl. at 1, 2. Mr. Bailey died on October 26, 2023, while he was detained at the Lawton Correctional and Rehabilitation Facility ("LCRF"). At that time, Defendant was in a contract with the State of Oklahoma to operate LCRF, a private prison. *Id*. at 1, 4. Plaintiff alleges Defendant failed to protect Mr. Bailey at LCRF and was deliberately indifferent to his "serious safety and medical and mental health needs,"

---

[1] Page citations reference the Court's ECF pagination.

when at least one LCRF inmate killed Mr. Bailey in his cell and placed his body in a garbage can. *Id*. at 1-2, 4. Plaintiff asserts claims against Defendant under 42 U.S.C. § 1983 and state law, related to Mr. Bailey's death.

Defendant filed a motion to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Doc. 9. Defendant argues Plaintiff (1) presents "cut and paste" allegations that fail to state a claim, (2) fails to identify an underlying constitutional violation for failure to protect, (3) fails to allege adequately that any policies and customs caused Mr. Bailey's death, (4) fails to allege plausibly that any failure to train or supervise caused the death, and (5) fails to state a claim for intentional infliction of emotional distress. Plaintiff has responded to the motion to dismiss, Doc. 13, and Defendant has replied, Doc. 14.

## II.    <u>Standard of Review</u>

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In reviewing a motion to dismiss under Rule 12(b)(6), this Court "must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Hardy v. Rabie*, 147 F.4th 1156, 1163 (10th Cir. 2025) (citation modified). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 558 (citation modified). A complaint "does not need detailed factual allegations," but it does need "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citation modified). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (citation omitted). The nature and specificity of allegations required to state a plausible claim will vary based on the context and "require[] the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must "consider the complaint's allegations taken as a whole." *Clinton*, 63 F.4th at 1275 (citation modified).

Any complaint that satisfies this plausibility standard is "well-pleaded" and "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citation modified). "Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citation modified).

### III.    **Plaintiff's Complaint**

Defendant contracted with the State of Oklahoma "for the management and operation" of LCRF "at all relevant times to this action."  Compl. at 4.   Plaintiff alleges Mr. Bailey died in the early morning of October 26, 2023,[2] at LCRF "from at least three" "sharp force injury wounds to the head" that "penetrated the underlying skull bone," "stab wounds to the neck and right jugular vein," and other wounds to the face, ears, neck, and back.  *Id*. at 1-2.   Three correctional officers—Daniel Tucker, Sadie Eilers, and Nathan Allgood—were assigned on October 26, 2023, to Housing Unit 4, where Mr. Bailey was housed.  *Id.* at 4.  Plaintiff alleges a series of events that morning related to his death:

- Approximately 5:00 a.m.: Officer Allgood "let[s] the inmate suspected of murder out of his assigned cell on Charlie Pod and into the Alpha Pod," where Mr. Bailey is housed;

- Approximately 5:03 a.m.: "the pod door opens, and the inmate suspected of murder enters [Alpha] Pod";

- 5:08 a.m.: "two inmates enter [Mr.] Bailey's Cell 203 and place a dark blanket on the door";

- 7:53 a.m.: "two inmates carry the trash can, that appears heavy, downstairs from Cell 203";

- 7:54 a.m.: "the trash can is placed by the Pod Door" by the two inmates;

- 9:57 a.m.: Mr. Bailey's body is discovered.

*Id*. at 4-5.

---

[2] Plaintiff mistakenly refers to the date of Mr. Bailey's death as January 31, 2023—once in the Complaint, Compl. at 1, and once in her Response, Doc. 13 at 14.  But Defendant understands the date of death to be October 26, 2023.  Doc. 9 at 7.

According to the Complaint, Mr. Bailey was "hogtied, gagged, stabbed and killed in his cell, and his body was placed in a garbage can, taken from [his cell], and placed by the pod door." *Id.* at 4.  Plaintiff alleges that "despite calls from inmates, inmate advocates, and family members of inmates to the facility advising the Warden of the assault and death of [Mr.] Bailey, while the assault and killing was in progress, no Correctional Officer responded and no count was made which would have led to the discovery of [Mr.] Bailey, perhaps in time for emergency medical intervention to have occurred." *Id*. at 4-5 (citation modified).  Plaintiff further claims Mr. Bailey's sister called the Agent in Charge of the Oklahoma Office of the Inspector General, before Mr. Bailey's body was discovered at 9:57 a.m., stating an inmate had notified her that a correctional officer had "intentionally let an inmate into Housing Unit 4 Alpha Pod where [Mr.] Bailey was killed." *Id.* at 5.  Plaintiff alleges GEO officials "witnessed the events that led to [Mr.] Bailey's death and did nothing to intervene" to "ensure the protection of the inmates," or alternatively, "failed in their duty to monitor the closed-circuit television footage." *Id.* at 5.

The Complaint also references an Oklahoma Department of Corrections ("ODOC") "Notice to Cure" letter to Defendant on April 23, 2024, that referenced three inmate deaths at LCRF in 2023—Mr. Bailey's death and two earlier inmate deaths on March 21, 2023, and May 6, 2023.  *Id*. at 6-7; *see also* Doc. 1-2 (attaching copy of letter).  According to ODOC's Notice to Cure, "investigative findings indicated that appropriate counts and/or security checks were not conducted" in connection with the deaths.  Compl. at 6.  "Contract Monitor reviews have repeatedly found that during count times, inmates are getting out of their cells, moving around the pod, and taking showers." *Id*.  Further, according to the

Notice to Cure, monitors "found periods of time where are no Correctional Officers or other staff on pods for an extended periods of time when counts and/or security checks should have been conducted," and these "counts and accurate log activities" "are routinely not completed at LCRF in violation of" policies.  *Id*. (citation modified).

Plaintiff next alleges Defendant maintained a custom, policy, or practice and history of deliberate indifference at LCRF.  Plaintiff claims the "customs, policies, and procedures identified by the" ODOC Notice to Cure "are the causal connection for the injuries, loss of life and loss of property by" Mr. Bailey.  *Id*. at 7.  Plaintiff also alleges "a history of deliberate indifference with regard to the medical, safety, and security needs of its inmates," and references statements by prison officials and reports of inmate assaults at LCRF from 2009, 2018, 2020, 2021, 2022, and 2024.  *Id*. at 8-9.

According to the Complaint, Defendant persists in its "unconstitutional policies and procedures," which also include:

> a facility that lacks working doors and locks on many cells, permitting inmates to move freely between pods; ignoring specific threats unless physical violence has already occurred; failing to maintain personnel to monitor cameras; failure to maintain working security cameras; failing to appropriately discipline correction officers for failing to properly secure inmates within their pods; and failing to perform counts.

*Id.* at 9-10.  Plaintiff further claims these "practices, procedures, policies and customs" "are the causal connection to the death" of Mr. Bailey, and Defendant "knew their customs, policies and procedures were constitutionally deficient and knew that its practices and customs" violated Mr. Bailey's right "to be protected from violence."  *Id*. at 10.

In her Claims for Relief, Plaintiff alleges Defendant violated its duty under the Eighth Amendment to protect inmates and provide humane conditions of confinement. *Id*. at 10. "GEO failed to properly supervise, monitor and train its correctional staff and had unconstitutional widespread[] policies, practices, patterns and customs with respect to the safety of its inmates," and these "acts and omissions by GEO by policy, pattern, custom, or practice are causally related to the injuries" against Mr. Bailey and "rise to the level of a constitutional violation under municipal liability theory." *Id*. at 11. Plaintiff alleges an "affirmative causal link between the deliberate indifference to [Mr.] Bailey's serious medical needs, his safety, the violation of his civil rights and ultimately his death" and Defendant's "customs, policies and practices." *Id*. Defendant, according to Plaintiff, "knew or should have known" that these customs, policies, and practices "posed substantial risk to the health and safety" of inmates, and it "failed to take reasonable steps to alleviate the risks due to deliberate indifferent to inmates." *Id.* Plaintiff seeks damages against Defendant under 42 U.S.C. § 1983. *Id.*

In a separate section titled "Violation of Oklahoma Governmental Tort Claims Act," Plaintiff alleges Defendant's conduct "is extreme, outrageous and caused pain, suffering, severe emotional distress and the death of" Mr. Bailey. *Id*. at 12; *see also id.* at 10 (alleging that Defendant's actions "resulted in mental and physical pain and suffering and death to [Mr.] Bailey"). Plaintiff further seeks damages under "Oklahoma's Wrongful Death Statute" based on the "intentional and reckless actions of Defendant by and through its agents, employees, correctional officers and other staff, which can only be described as extreme and outrageous." *Id*. at 12.

IV.    **Analysis**

A.    **Federal Constitutional Claim**

Plaintiff brings her federal claim under 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). To succeed on a § 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States," and that the violation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983.

Plaintiff brings her § 1983 claim against Defendant under a theory of municipal liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (establishing municipalities are "included among those persons to whom § 1983 applies"). Although Defendant is a private entity, Plaintiff can sue Defendant under this *Monell* theory of municipal liability. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) ("Although the Supreme Court's interpretation of § 1983 in *Monell* applied to municipal governments and not to private entities acting under color of state law, caselaw from this and other circuits has extended the *Monell* doctrine to private § 1983 defendants." (citation modified)).

Defendant moves to dismiss Plaintiff's § 1983 claims and a state-law claim of intentional infliction of emotional distress. Doc. 9. Defendant argues Plaintiff (1) presents "cut and paste" allegations that fail to state a claim, (2) fails to identify an underlying constitutional violation for failure to protect, (3) fails to allege adequately that any policies and customs caused Mr. Bailey's death, (4) fails to allege plausibly that any failure to train

8

or supervise caused the death, and (5) fails to state a claim for intentional infliction of emotional distress. *Id.* at 10-26.

### 1. Defendant's objection to "cut and paste" allegations in the Complaint does not warrant its dismissal.

Defendant first argues the Court should dismiss the Complaint because Plaintiff's "cut and paste" allegations fail to state a claim. Doc. 9 at 10-12. Defendant complains that seven paragraphs in the Complaint, Compl. at ¶¶ 23-29, are "word-for-word copies of allegations" about Defendant also made in two other recent complaints filed in the Western District of Oklahoma. Doc. 9 at 10 (citing *Lockett v. GEO Group, Inc.*, No. CIV-25-236-HE, Doc. 1; *Vigil v. GEO Group, Inc.*, No. CIV-24-678-G, Doc. 1). The seven paragraphs at issue allege against Defendant certain prior inmate assaults and deaths at LCRF and statements by Defendant and state officials.

Judge Heaton recently rejected Defendant's same argument when it sought dismissal of the complaint in *Lockett* on similar grounds. *See Lockett*, No. CIV-25-236-HE, Order, Doc. 13 (July 31, 2025), at 2-3. Judge Heaton noted "many of the same allegations from the *Vigil* complaint appear in" the *Lockett* complaint, but he found the "similar allegations are directed, in part, to establishing a basis for *Monell* liability." *Id.* The same is true here. Paragraphs 23 to 29 of Plaintiff's Complaint, even if copied from recent complaints, seek to establish *Monell* liability based on other security incidents at LCRF. Plaintiff does not rely exclusively on allegations "cut and pasted" from recent complaints; she includes several other paragraphs alleging specific conduct on the day of

Mr. Bailey's death.  Compl. at 4-5.  Defendant's first argument does not warrant dismissal of the Complaint.

### 2. Plaintiff plausibly alleges Defendant's deliberate indifference for a constitutional violation of failure to protect.

Plaintiff's federal constitutional claim is premised on Defendant's failure to protect Mr. Bailey, and Defendant argues Plaintiff fails to allege deliberate indifference for such a constitutional claim.

"Prison officials have a duty to protect prisoners from harm, including harm caused by other prisoners." *Turner v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 804 F. App'x 921, 925 (10th Cir. 2020).  "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citation modified).  "Deliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  "The objective component of deliberate indifference is met if the harm suffered rises to a level sufficiently serious to be cognizable under the Cruel and Unusual Punishment Clause." *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019) (citation modified).  For the subjective component, a plaintiff must "show the official knows of and disregards an excessive risk to inmate health or safety." *Id.* (citation modified).  "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation," does not constitute a violation of the Eighth Amendment.  *Farmer*, 511 U.S. at 838 (citation modified).

10

Defendant argues "the Complaint does not allege facts supporting a reasonable inference that any LCRF official was *deliberately indifferent* to a risk of harm to Mr. Bailey." Doc. 9 at 13. Defendant contends Plaintiff does not allege any subjective knowledge of risk of harm by any LCRF official, and any alleged warnings by inmates, inmate advocates, and inmate families "cannot serve as a basis for failure to protect" because those warnings "were provided contemporaneously." *Id.* at 13-14. Plaintiff responds that ODOC's Notice to Cure sufficiently alleges Defendant knew of risks to inmates from "repeated" and "routine" failures with counts and security checks. Doc. 13 at 10-11 (quoting Compl. at 6).

At this stage, the Court must accept Plaintiff's allegations in the Complaint as true and "construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Hardy v. Rabie*, 147 F.4th 1156, 1163 (10th Cir. 2025) (citation modified). The death of Mr. Bailey is objectively serious. Further, drawing reasonable inferences from Plaintiff's alleged facts, the Complaint plausibly alleges that Defendant had sufficient knowledge of such a risk. The Notice to Cure references two other deaths at LCRF in 2023 in the months before Mr. Bailey's death, and ODOC "repeatedly found" deficiencies at LCRF with counts and security checks. Compl. at 6. Construing the allegations as true, "inmates, inmate advocates, and family members of inmates" advised the Warden of the assault and Mr. Bailey's death "while the assault and killing [were] in progress," but there was no response by a correctional officer or no count. *Id.* at 4-5. An inmate also notified Mr. Bailey's sister, and she called the ODOC Inspector General to advise an officer had "intentionally let an inmate into"

11

Mr. Bailey's housing unit. *Id.* at 5. Accepting Plaintiff's allegations as true here, the undersigned finds the Complaint plausibly alleges an Eighth Amendment claim of failure to protect.

###### 3. Plaintiff plausibly alleges an informal custom by Defendant and a causal link between Defendant's custom and the alleged injury.

"Municipalities are liable under § 1983 only when the constitutional violation is caused by the municipality's policies or customs." *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1048-49 (10th Cir. 2022); *see Monell*, 436 U.S. at 694 ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." (citation modified)). To state a claim against Defendant in this context, Plaintiff "must allege facts showing: (1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020) (citation modified).

Under Tenth Circuit law, an official policy can include:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation modified). Defendant acknowledges here that Plaintiff relies on the second and fifth forms

12

of official policy for *Monell* liability.  Doc. 9 at 17.  This section addresses Plaintiff's reliance on an informal custom.

### a.    Informal custom

Defendant argues "Plaintiff has failed to plausibly allege the existence of any informal custom for purposes of his municipal liability claims" against it.  *Id.* at 17. Defendant contends Plaintiff fails to show sufficient factual similarity and proximity in time between the "the underlying facts" of Mr. Bailey's death and the deaths referenced in ODOC's Notice to Cure and earlier "unspecified incidents and/or reports of violence occuring in 2009, 2018, 2021, and 2022."  *Id.* at 18-19.  Plaintiff responds that ODOC's "characterization of GEO's security failures as 'routinely' and 'repeatedly' is sufficient to establish GEO's policy and is sufficient to withstand a motion to dismiss."  Doc. 13 at 12; *see also* Compl. at 7-10.  Plaintiff also relies on the circumstances of Mr. Bailey's death and the Complaint's allegations of earlier reports of violence.  Doc. 13 at 14.

Plaintiff plausibly alleges an informal custom to satisfy the first element of a *Monell* claim for failure to protect.  The Complaint cites ODOC's Notice to Cure and alleges Defendant had a well-established, informal custom of correctional officers or staff members "repeatedly" and "routinely" not conducting counts or security checks and not completing accurate log entries around the time of Mr. Bailey's death in 2023.  Compl. at 6.  The Notice to Cure outlines Mr. Bailey's death and two other deaths earlier that year at LCRF where "appropriate counts and/or security checks were not conducted."  *Id.*  The Notice to Cure also describes at LCRF "periods of time where there are no Correctional Officers or other staff on pods for extended periods of time when counts and/or security

13

checks should have been conducted." *Id.* As to Mr. Bailey's death, Plaintiff claims "no Correctional Officers responded and no count was made" "while the assault and killing [were] in progress" at LCRF, though "calls from inmates, inmate advocates, and family members of inmates [were made] to the facility advising the Warden" during this time. *Id.* at 4-5. And the Complaint describes prior assaults and attacks at LCRF in 2009, 2018, 2020, 2021, 2022, and 2024, *id.* at 8, and statements by Defendant and state officials about staffing shortages and violence at LCRF, *id.* at 9.

Finally, the Complaint alleges Defendant's additional policies and procedures included allowing "[non]working doors and locks on many cells[;] permitting inmates to move freely between pods; ignoring specific threats unless physical violence [had] already occurred; failing to maintain personnel to monitor cameras; fail[ing] to maintain working security cameras; [and] failing to appropriately discipline correction officers for failing to properly secure inmates within their pods." *Id.* at 9-10.

Accepting all allegations as true at this stage, the undersigned concludes Plaintiff's allegations reasonably reflect Defendant had "an informal custom amounting to a widespread practice," *Waller*, 932 F.3d at 1283 (citation modified), that satisfies the first element for Plaintiff's municipal liability claim for failure to protect. *See, e.g., Lockett*, No. CIV-25-236-HE, Order, Doc. 13 (denying GEO Group's motion to dismiss failure-to-protect claim based on custom policy or custom, and citing allegations of "assaults by gang members" at LRCF "less than one year apart" where "both plaintiffs claim prison officials were aware of threats on their lives before the assaults"); *Vigil v. GEO Grp., Inc.*, No. CIV-24-678-G, 2025 WL 900447, at *4 (W.D. Okla. Mar. 25, 2025) (denying GEO's motion to

14

dismiss failure-to-protect claim based on policy or custom, and citing plaintiff's allegations of "LCRF's inmate placement, lack of adequate staffing and maintenance, and failure to ensure secure doors," plus "incidents of attacks upon inmates at the facility in 2009, 2018, 2020, 2021, 2022, and 2024").

### b.    Causal connection

Defendant also argues Plaintiff "fails to establish a sufficient causal connection between Mr. Bailey's death and alleged improper custom." Doc. 9 at 21. When assessing causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1241 (10th Cir. 2020) (citation modified). A plaintiff satisfies this requirement if she shows "the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Here, Plaintiff sufficiently alleges causation. She claims Defendant's "acts and omissions" through a practice of not properly conducting counts and security checks and otherwise failing to secure the inmates' safety "are causally related" and were the "moving force" behind Mr. Bailey's death, Compl. at 11, as inmates were able to enter Mr. Bailey's cell, Mr. Bailey was assaulted and killed, and no count or security check was made during "the assault and killing," *id.* at 5. Accepting Plaintiff's well-pleaded allegations as true, viewing those allegations in the light most favorable to her, and drawing reasonable inferences in her favor, Plaintiff sufficiently pleads causation.

15

**4.**    **Plaintiff plausibly alleges a failure of training or supervision and a causal link between that failure and the alleged injury.**

"A failure-to-train claim" is another "example of these types of § 1983 claims against municipalities," *Crowson*, 983 F.3d at 1186, based on the official policy of an entity like Defendant. "To recover for a failure to train," Plaintiff must establish (1) "the existence of a [GEO] policy or custom involving deficient training," (2) "the policy or custom's causation of an injury," and (3) Defendant's "adoption of a policy or custom with deliberate indifference." *Lance v. Morris*, 985 F.3d 787, 800 (10th Cir. 2021). A plaintiff satisfies the deliberate indifference standard by showing "the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010) (citation modified).

"In most instances," a plaintiff can establish such notice by showing "the existence of a pattern of tortious conduct." *Id.* (citation modified). Or, if there is no pattern, a plaintiff can establish the municipality's deliberate indifference if a constitutional violation "is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." *Id.* (citation modified); *see also Murphy v. City of Tulsa*, 950 F.3d 641, 648 (10th Cir. 2019) (explaining "when a § 1983 claim is based on a policy of inaction, the

plaintiff must present evidence that the municipality made a conscious decision not to act" (citation modified).

Addressing only those allegations related to counts and security checks, Defendant claims Plaintiff (1) does not plausibly allege problems with counts or security checks "were the result of a training or supervision failure," (2) "does not explain how a count/check could have prevented Mr. Bailey's murder," and (3) "has not shown Defendant was deliberately indifferent to a need for more or better training/supervision regarding counts and/or security checks." Doc. 9 at 24. Defendant further argues Plaintiff has not pleaded adequately any pattern of deliberate indifference based only the allegations of Mr. Bailey's death and the two other deaths at LCRF in 2023. *Id.* at 24-25. Plaintiff responds that a pattern of constitutional violations is unnecessary when Defendant fails to train its employees on recurring situations, presenting an obvious potential for violations. Plaintiff alleges the "same known risks to inmates" from prior deaths and injuries at LCRF allowed an inmate to enter Mr. Bailey's cell and murder him without any counts or security checks. Doc. 13 at 15; *see also* Compl. at 4-5.

At this Rule 12(b)(6) stage, the undersigned can plausibly infer from Plaintiff's allegations that Defendant had actual or constructive notice that its lack of training and supervision of LCRF's correctional staff would result in a failure to protect inmates like Mr. Bailey after the two prior deaths in 2023 at LCRF and associated failures with counts and security checks; faulty doors, locks, and security cameras; and inmate movement between pods, but Defendant chose to disregard the risk of harm, resulting in Mr. Bailey's murder. Though the undersigned is "not sure whether [Plaintiff] can prove each of those

elements at trial or even survive summary judgment, [she] allege[s] sufficient facts supporting each element for [her] claim to proceed past the motion-to-dismiss stage." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020).

### B.    State claims

#### 1.    Plaintiff plausibly alleges a state claim for intentional infliction of emotional distress.

A plaintiff may recover under Oklahoma law for intentional infliction of emotional distress ("IIED") only for "extreme and outrageous conduct coupled with severe emotional distress." *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To state a claim, a plaintiff must establish "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Id.* Under Oklahoma law, the "recklessness" element of a claim for IIED "includes actions that are in deliberate disregard of a high degree of probability that the emotional distress will follow." *Estate of Trenadue ex rel. Aguilar v. United States*, 397 F.3d 840, 856 (10th Cir. 2005) (citation modified). Defendant argues Plaintiff's allegations for this claim "are simply a formulaic recitation of the elements of an IIED claim," Doc. 9 at 26, but Defendant does not argue as to specific deficiencies of any element.[3]

---

[3] In her Response, Plaintiff misconstrues Defendant's argument and understands Defendant *not* to challenge whether Plaintiff "stated sufficient facts to advance" an IIED claim. Doc. 13 at 18. Defendant replies that the Court should dismiss the IIED claim because Plaintiff "failed to substantively address" its motion on the state-law claim. Doc. 14 at 11. However, "a district court may not grant a motion to dismiss for failure to state a claim merely because a party failed to file a response. This is consistent with the purpose of Rule 12(b)(6) motions as the purpose of such motions is to test the sufficiency of the

At this juncture, the undersigned concludes Plaintiff has adequately pleaded a claim for intentional infliction of emotional distress.  Taking the full scope of Plaintiff's allegations as true and drawing reasonable inferences in her favor, Plaintiff alleges Defendant had a history of failed locks, doors, and security cameras as well as failures with inmate movement, timely counts, and security checks, with two inmate murders in the months leading up to Mr. Bailey's death and several earlier assaults at LCRF from Defendant's failure to protect.  Compl. at 6-8, 9-10.  Plaintiff further alleges on the morning of October 26, 2023, a GEO officer intentionally allowed another inmate into Mr. Bailey's pod at 5:03 a.m., two inmates were able to enter Mr. Bailey's cell,  and Mr. Bailey's body was found at approximately 9:57 a.m.—when during that time no count was made or security check was made, despite calls to LCRF "while the assault and killing [were] in progress." *Id.* at 4-5.  Plaintiff also alleges that Defendant's actions "resulted in mental and physical pain and suffering and death to [Mr.] Bailey." *Id.* at 10.

The undersigned recommends that the claim be allowed to proceed, as Plaintiff's allegations are sufficient at this stage to support an inference that Defendant's conduct was intentional or reckless, outrageous, and resulted in profound emotional distress. *See Twombly*, 550 U.S. at 556 (explaining the plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the alleged wrongdoing); *see also Brown v. GEO Grp., Inc.*, No. 18-80026-CV, 2020 WL 13847462,

---

allegations within the four corners of the complaint after taking those allegations as true." *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation modified).

at *15 (S.D. Fla. Oct. 20, 2020) (denying GEO's motion to dismiss state-law IIED claim based on plaintiff's allegations "of a pervasive discriminatory environment against homosexual inmates" and failure "to do anything to correct this discrimination").

### 2.    Plaintiff does not allege a claim under the Oklahoma Governmental Tort Claims Act.

Plaintiff labels a section in her Complaint as "Violation of Oklahoma Governmental Tort Claims Act" ("OGTCA"), in which she appears to raise a claim for IIED and "damages under Oklahoma's Wrongful Death Statute" under Okla. Stat. tit. 12, § 1053.  Compl. at 12.  Defendant moves for dismissal of any claims "pursuant to the" OGTCA.  Doc. 9 at 26.  Under Oklahoma law, Plaintiff must exhaust certain administrative remedies and comply with OGTCA notice provisions before filing state-law claims against an entity like Defendant.  *See* Okla. Stat. tit. 57, § 566.4-5.  Defendant argues Plaintiff's compliance with any OGTCA notice provisions "is a jurisdictional requirement for purposes of Plaintiff's [state-law] claims, but is not a source of substantive rights itself." Doc. 14 at 11.  The undersigned agrees.

The undersigned, though, understands Plaintiff not to raise any substantive claim under the OGTCA.  Doc. 13 at 18.[4]  Rather, Plaintiff alleges she exhausted her OGTCA administrative remedies so she may pursue her stated claims for IIED and "common law torts and statutory torts against GEO pursuant to [12 Okla. Stat. tit. 12, § 1053]."  Doc. 13

---

[4] Though the relevant section is confusingly labeled "Violation of Oklahoma Governmental Tort Claims Act," the undersigned finds the caption to be an error that does not dictate the substance of Plaintiff's state-law claims.

at 18; *see also* Compl. at 12.  Defendant moves for dismissal of Plaintiff's IIED claim but does not move for dismissal of any other state-law claim.  Accordingly, the Court need not rule on Defendant's motion to the extent it seeks dismissal of any claim under the OGTCA, as the Complaint does not raise any substantive claim under the OGTCA.

## V.      Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **DENY** Plaintiff's motion to dismiss.  Doc. 9.  The parties are advised of their right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objection must be filed with the Clerk of this Court not later than February 27, 2026.  *See id*. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 13th day of February, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

21